UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAY FOSTER, et al.,

               Plaintiffs,                       Case No. 1:13-cv-255

   vs.

                                             Magistrate Judge Bowman

JAMES D. LITTERAL,

               Defendant.

**MEMORANDUM OF OPINION AND DECISION**

Plaintiffs Jay and Bonny Foster filed the instant action on April 18, 2013 asserting claims for excessive force, pursuant 42 U.S.C. § 1983, as well as state law claims for battery against Defendant James Litteral. (Doc. 1). Plaintiffs' complaint arises out of an altercation between Plaintiff and Defendant. County Risk Sharing Authority ("CORSA") filed an Intervenor complaint on January 7, 2014. (Doc. 14).

This action is now before the Court on CORSA's motion for summary judgment and the parties' responsive memoranda. (Docs. 29, 30, 21, 32, 33). The parties have consented to the exercise of jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 8). For the reasons set forth herein, the undersigned finds that CORSA'S motion for summary judgment is well-taken.

**I.    Background and Facts**

Plaintiffs Jay and Bonny Foster are residents of Portsmouth, Ohio. At all times relevant to this action, Defendant James D. Litteral was a special deputy with the Scioto County Sheriff's Office. The special deputy program is a volunteer support group that assists the Scioto County Sheriff's office. The policy provides, in part, as follows:

1

16.3.1 Special Deputy/Reserve Program

A. The SCSO Special Deputy program is a volunteer support group, whose duties and authority are the same as full time deputies, when assigned and working under the direct supervision of a paid employee as authorized by a Captain and/or Chief Deputy in command of a particular division component. Special deputies shall not use their identification outside their assigned duties nor shall they carry an off duty weapon. Special deputies maintain the chain of command and report to whatever supervisor they are working for. The special deputies are under the command of the Captain assigned to one of the three major Division Components (Jail, Road & 911) in which they are volunteering to work for.

(Doc. 25, Depo. James Litteral, Exhibit 4 at Policy Sec. 16.3.1.A).

Intervener CORSA is a joint self-insurance risk pool authorized by O.R.C. 2744.181. (Doc. 26, Miller Aff.)  Sixty-five of Ohio's eighty-eight counties are members of CORSA. Liability coverage is provided for employees of members, but only if the employees are acting with the course and scope of their duties as such.  Scioto County, Ohio was a covered county under CORSA Coverage Agreement No. CA 001 20130501.  *Id.*

On April 19, 2012, Defendant James Litteral was helping his brother Ralph locate his children.  (Doc. 25, James Litteral Dep. p. 12).  Ralph's (now ex-) wife had taken the children from the marital home and Ralph had obtained an emergency order of temporary custody from the Court of Common Pleas, Scioto County, Ohio, Domestic Relations Division. *Id* at 13.  After obtaining the Order, Defendant and his brother went to the Scioto County's Sheriff's department to get information about executing the court order.  At the station, Chief Deputy Miller informed the Defendant and his brother that Ralph would have to locate the kids.  After the kids were located, the men were told to call the Sherriff's office and they would dispatch deputies to retrieve the children.

Defendant, Defendant's son Chris, and his brother Ralph then went to look for his brother's wife car and check the homes of her relatives.  (Doc. 25, p. 18).  While driving along Careys Run Road, near Portsmouth, Ohio, the men spotted the children playing behind the residence of the Plaintiffs Jay and Bonny Foster. Mrs. Foster is Ralph's (now ex-) sister-in-law. The men pulled into the Fosters' driveway, went to the back of the Fosters' house where the children were playing in an attempt to recover them.  As she saw the men approaching the children, Mrs. Foster called them into the house. Before the children made it to the house, Ralph Litteral grabbed one child and Defendant's son Chris grabbed the other child.  Mrs. Foster also grabbed the arms and legs of the children.  A struggle ensued.  Everyone eventually made it into the Foster residence.  Ralph Litteral gave Mrs. Foster a copy of the custody papers.

 The parties disagree about the timing of what happened and/or who did what next:

Defendant contends that Mr. Foster then appeared from outside with a stun gun and pistol in his hands and pointed at Defendant and his brother.  (Doc. 30 p. 20). Defendant contends that he then drew his pistol and yelled at Mr. Foster to put his gun down.  In an effort to keep the peace, he then told him that he was a deputy and showed Mr. Foster his badge. Mr. Foster put hisstun  gun down.  The police were called and arrived shortly thereafter.

According to Plaintiffs' however, upon entering the Foster's home, Defendant elbowed Mr. Foster in the chest and immediately announced himself as being under the authority of the Scioto County's Sherriff's Office, pulled his gun and showed his badge.  He then loaded the kids into his vehicle.  According to Mrs. Foster, the parties continued to argue about the kids and Defendant again showed his badge and said he had the right to take the kids based upon

3

his brother's temporary Order of custody.  Deputy Sissel arrived and confiscated all weapons. Mrs. Foster then called an ambulance because Mr. Foster was having chest pain.

Based upon the foregoing, Plaintiffs' complaint states two causes of action against Defendant Litteral: Count I, use of excessive force in violation of the Fourth Amendment; and Count II, Battery pursuant to Ohio state law.  In light of Plaintiffs' allegation that Defendant Litteral was acting under color of state law, Plaintiffs assert jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367 for claims based under 42 U.S.C. § 1983.

Intervenor CORSO now moves for summary judgment. CORSA contends that Defendant James Litteral is not covered under the agreement between Scioto County and CORSA because Mr. Litteral was outside the scope of his duties as a "special deputy" at the time of the incident.  Accordingly, CORSA seeks a declaration from this Court that, under CORSA Coverage Agreement No. CA 001 20130501 entered into with Scioto County, Ohio, CORSA has no duty to defend or indemnify Defendant James Litteral against Plaintiffs' claims.

**II. Analysis**

*A.  Standard of Review*

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted).  "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted).  "Weighing of the evidence or making credibility determinations are prohibited at

4

summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted).

**B. CORSA's Motion for Summary Judgment is Well-taken.**

*1. Coverage Agreement*

CORSA coverage is a "claims-made" coverage, rather than occurrence-based coverage, meaning that coverage is determined by the agreement in effect at the time of the claim, not the time of the occurrence. The applicable agreement is No. CA 001 20130501

5

(the "Coverage Agreement"), entered into with Scioto County, Ohio as the "Member," with a

coverage period of May 1, 2013 to May 1, 2014. The policy provides, in relevant part:

GENERAL LIABILITY:

1. By reason of the liability imposed upon a **Covered Party(ies)** by law, or assumed by a **Covered Party(ies)** under a **Covered Contract**, for **Damages**, direct or consequential, that the **Covered Party(ies)** becomes legally obligated to pay and that arises out of any **Occurrence** on account of: **Bodily Injury, Property Damage, Personal Injury, Advertising Injury, Products/Completed Operations Hazard,** or **Medical Professional Liability.**

GENERAL DEFINITIONS
***
**Covered Party(ies)** means, individually and collectively:
***
3. Any **Employee** of the **Member**, or volunteer of the **Member** who is designated by an authorized **Employee** of the **Member**, while acting within the scope of his/her duties as such…
***
9. The **Member**'s Law Enforcement Officers while engaged in Special Duty activities for third parties, provided that such Special duty activities are approved in advance by the **Member**'s Sheriff;
***

**Employee** means:

1. As used in Section I, Liability Coverage Agreements, any person employed by the **Member**, a leased worker, or an elected or appointed official who is compensated for performing services for the **Member**;
***
**Law Enforcement Activities** means the specific and unique duties and responsibilities of law enforcement officers in the course of their employment by a Law Enforcement Department or Agency of the **Member**, including but not limited to the Sheriff's Office, Probation and Parole Departments, Prosecutors, and County Jail. ***

(Doc. 26, Miller Aff.)

*2. CORSA is entitled to Judgment as a Matter of Law*

CORSA first received notice of the Plaintiffs' claims against Mr. Litteral around July 24,

2013. (Doc. 26, Miller Aff., ¶ 3). At that time, Defendant Litteral's attorneys sent a letter to the

6

Scioto County, Ohio Prosecuting Attorney indicating that this suit had been filed against Defendant. *Id.* Thereafter, CORSA was notified of the lawsuit by the Scioto County Prosecuting Attorney's Office. As detailed above, CORSA now seeks a declaration from this Court that it has no duty to defend or indemnify Defendant James Litteral against Plaintiffs' claims because the Defendant is not a "Covered Party" within the meaning of Coverage Agreement. The undersigned agrees.

Defendant admits that he was not acting under his authority as a special deputy when he was helping his brother locate his children. However, while he was at the Fosters, Mr. Foster retrieved a stun gun, and presented with threats of deadly force. As such, Defendant contends that "a reasonable person could conclude that Litteral was no longer acting in a private interest, but was acting to enforce the law." (Doc. 29). There was a threat of deadly force directed against an unarmed person holding his minor son and could constitute felonious assault or at least aggravated menacing. Accordingly, at the very least, Defendant asserts he was protecting the public and preserving the peace. See *Osborne v. Lyles; City of Cleveland* (1992), 63 Ohio St. 3d 326; *State v. Glover* 52 Ohio App. 2d 35, 367 N.E. 2d 1202.; *Nueens v. City of Columbus*, 275 F.Supp.2d 894 (S.D. Ohio 2003) (Addressing a police officer's purported obligation to preserve and maintain the peace, even when off duty).

Plaintiffs' contend that Defendant Litteral was acting under color of law and acting within his scope of employment as envisioned by the CORSA Coverage Agreement. In this regard, Plaintiffs contend that upon arrival, Defendant flashed his badge and announced himself as a Scioto County Sherriff. In line with Defendants argument, Plaintiffs further contend that Litteral was acting under authority of the sheriff and in accordance with Ohio law which obligates the Sheriff to preserve the public peace. Defendant Litteral claims that he attempted

7

to further this obligation when Plaintiff Jay Foster pulled his weapon. Plaintiff contends that such facts create an issue of fact for a jury to determine whether Litteral was acting under the scope of his employment. Such is not the case.

Here, viewing the facts in favor of the non-moving parties, the undersigned finds that Defendant Litteral was not acting within the scope of his duties as a special deputy on April 19, 2013. Notably, Mr. Litteral, has repeatedly represented to the Court that he did not consider himself to be acting as a special deputy. Mr. Litteral admits that he was not within the course and scope of his duties as a special deputy. Rather, he was acting as a "concerned uncle." (Doc. 25, Litteral dep. pp. 49, 78-79). Furthermore, the cases cited by Defendant relating to off-duty police officers obligation to maintain the peace are factually distinguishable to the instant action. Namely, such cases involved full-time police officers securing a scene after a traffic accident and breaking up a fight at a restaurant. See *Osborne,* 63 Ohio St. 3d 326; *Nueuns,*, 275 F.Supp.2d 894. Here, the Scioto County Sheriff's policy concerning special deputies is clear that a special deputy only has the authority of office when he is on assignment, and Mr. Litteral's testimony clearly establishes that he had not been assigned to search for his brother's children. (Doc. 25, Litteral Dep. p,. 72, 83, 104-105).

Accordingly, the undersigned finds that Defendant Litteral was acting outside the course and scope of his duties as a special deputy during the events on April 19, 2013. As such, CORSA has no duty to defend or indemnify Defendant James Litteral against Plaintiffs' claims.

### C. Subject Matter Jurisdiction

Plaintiffs have alleged that Defendant was acting "under color of state law", and thus 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367 grant the Court subject-matter

jurisdiction to hear this matter. The question of whether Defendant Litteral was acting outside the scope, however, is separate and distinct from that of whether he was acting under color of law for purposes of Plaintiffs' excessive force claim under 42 U.S.C. § 1983. As explained below, the undersigned also finds that Defendant Litteral was not acting under color of law during the incident at the Fosters home. As such, this Court lacks jurisdiction over Plaintiffs' claims.

The Court may *sua sponte* address the question of subject matter jurisdiction pursuant to Rule 12(h)(3), which provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3). The federal courts always have jurisdiction to determine their own jurisdiction. *Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 627–28 (6th Cir.2009) (citing *United States v. Ruiz,* 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002); *Lacey v. Gonzales,* 499 F.3d 514, 518 (6th Cir.2007)). *See also Beck v. Miriani,* 293 F.2d 333, 335 (6th Cir.1961) (the question of the court's subject matter jurisdiction can be raised at any time).

Because the federal courts are courts of limited jurisdiction, it is incumbent upon the district court to raise the question of subject matter jurisdiction *sua sponte* whenever it appears from the pleadings or otherwise that jurisdiction is lacking. *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Not only is a court permitted to raise the issue of its subject matter jurisdiction *sua sponte,* it must do so when a question as to its jurisdiction arises. *Clarke v. Mindis Metals, Inc.,* No. 95–5517, 1996 WL 616677, at *3 (6th Cir. Oct.24, 1996) ("Neither party has raised the jurisdictional issue this case presents, but it is axiomatic that we *must* raise issues of subject-matter jurisdiction *sua sponte* ")

(emphasis added) (citing *Community First Bank v. Nat'l Credit Union Admin.,* 41 F.3d 1050, 1053 (6th Cir.1994)).

As detailed above, Plaintiffs filed the instant action on April 18, 2013, asserting claims for excessive force, pursuant 42 U.S.C. § 1983, as well as state law claims for battery against Defendant James Litteral.  (Doc. 1).  To succeed on a claim for a violation of § 1983, a plaintiff must show that (1) a person (2) acting under color of law (3) deprived him of his rights secured by the United States Constitution or its laws. *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001).  Thus, section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office. *See West v. Atkins*, 487 U.S. 42, 49-50 (1988) ("The traditional definition of acting under color of state law requires that the defendant ... exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.") (internal citation and quotation marks omitted).

The requirement of state action under § 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfgrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999).  Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office. *See West v. Atkins,* 487 U.S. 42, 49–50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ("The traditional definition of acting under color of state law requires that the defendant ... exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.") (internal citation and quotation marks omitted).  A

10

person "acts under color of state law when he abuses the position given to him by the state." *Id.* at 50, 108 S.Ct. 2250.

The key determinant is whether the actor intends to act in an official capacity or to exercise official responsibilities pursuant to state law. *See id.* Logically, then, not every action undertaken by a person who happens to be a state actor is attributable to the state. Although "under 'color' of law means under 'pretense' of law," the acts of state officials "in the ambit of their personal pursuits" do not constitute state action. *See Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (holding that the defendants—a Georgia sheriff, a policeman, and a special deputy—acted under color of state law when they arrested and then beat to death a young African American in order to protect themselves and to keep him from escaping).

Accordingly, a defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law. *See McNeese v. Vandercook*, 173 F.3d 429, 1999 WL 133266, *2 (6th Cir. 1999) (unpublished table decision) (holding that a deputy sheriff who struck a fellow deputy did not act under color of state law). For the purposes of a state-action analysis, there can be no pretense of acting under color of state law if the challenged conduct is not related in some meaningful way either to the actor's governmental status or to the performance of his duties. *See Zambrana–Marrero v. Suarez–Cruz,* 172 F.3d 122, 126 (1st Cir .1999). The conduct allegedly causing the deprivation of a constitutional law must be "fairly attributable" to the state. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982).

Here, the undisputed facts clearly demonstrate that Defendant Litteral was pursuing his purely personal, private interests. At the time of the incident, Defendant was not being

supervised by a Deputy Sheriff, nor was any other member of the Scioto County Sheriff's Office and the Scioto County Sheriff's Office aware of his whereabouts that day. Defendant was in his personal vehicle along with wearing plain clothing as opposed to a "special deputy" uniform. As stated in Defendant's prior motion to dismiss "Defendant was there merely as a caring family member attempting to help his brother retrieve his minor children pursuant to an emergency order previously issued by the Scioto County Common Pleas Court Domestic Relations Division." (Doc. 5, p. 4).[1] As such, this Court lacks subject-matter jurisdiction to hear this matter as there is no federal question present. Because federal subject matter jurisdiction is lacking, the Court declines to exercise supplemental jurisdiction as to Plaintiffs' claims arising under Ohio law. *See* 28 U.S.C. § 1367(c) (3).

### III. Conclusion

For the reasons stated herein, **IT IS ORDERED THAT** CORSA'S motion for summary judgment (Doc. 26) is **GRANTED**. The Court herein **DECLARES** that under CORSA Coverage Agreement No. CA 001 20130501 Intervenor CORSA has no duty to defend or indemnify Defendant James Litteral against Plaintiffs' claims herein. **IT IS FURTHER ORDERED THAT** action is **TERMINATED** from the active docket of this Court for lack of subject matter jurisdiction.

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[1] Defendant previously filed a motion to dismiss for lack of subject matter jurisdiction. Based solely on the allegations in the complaint, the Court found that Plaintiffs' complaint contained sufficient factual allegations to allege federal claim under §1983, and that the motion to dismiss was premature. On the current record before the Court, however, the evidence is clear that Defendant was not acting under color of state law during the relevant period.